IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

IN RE INTEREST OF MCKENZIE D. ET AL.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

IN RE INTEREST OF MCKENZIE D. ET AL.,
CHILDREN UNDER 18 YEARS OF AGE.

STATE OF NEBRASKA, APPELLEE,

V.

JENNIFER R., APPELLANT.

Filed June 1, 2021.    Nos. A-20-930 through A-20-932.

Appeals from the County Court for Scotts Bluff County: KRIS D. MICKEY, Judge. Affirmed.

William E. Madelung, of Madelung Law Office, P.C., L.L.O., for appellant.

Danielle Larson, Deputy Scotts Bluff County Attorney, for appellee.

RIEDMANN, ARTERBURN, and WELCH, Judges.

WELCH, Judge.

### INTRODUCTION

Jennifer R. appeals the termination of her parental rights to her three minor children. On appeal, Jennifer assigns as error that "[t]he State did not establish by clear and convincing evidence that one or more of the statutory grounds listed in [Neb. Rev. Stat.] § 43-292 [Reissue 2016] have been satisfied and that termination of parental rights is in the best interest [sic] of the minor child[ren]." For the reasons set forth herein, we affirm.

### STATEMENT OF FACTS

Jennifer is the natural mother of McKenzie D., born March 2010; Emily R., born March 2012; and Colten R., born July 2013. On June 3, 2020, the State filed juvenile court petitions in

- 1 -

Scotts Bluff County Court, sitting as a juvenile court, alleging that McKenzie, Emily, and Colten were children within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2016) in that they lacked proper parental care by the faults or habits of their parents and/or were in a situation or engaged in an occupation dangerous to life or limb or injurious to the health or morals of the juveniles, specifically: (1) that Jennifer's use of controlled substances placed the juveniles at risk of harm and deprived them of necessary parental care, (2) the juveniles' parents failed to meet the juveniles' basic needs, and (3) the juvenile's father was in prison.

The juvenile petitions also moved the court to terminate Jennifer's and the father's parental rights pursuant to § 43-292(2) and (4) and alleged that termination of their parental rights was in the best interests of the children. Although the adjudication and termination of parental rights involved both Jennifer and the children's father, the father is not involved in this appeal and will only be mentioned as necessary for clarity.

Following a combined adjudication and termination hearing, the court entered an order in November 2020 adjudicating McKenzie, Emily, and Colten as children within the meaning of § 43-247(3)(a) and terminating both Jennifer's and the father's parental rights to McKenzie, Emily, and Colten. The court also found that the State had proved, by clear and convincing evidence, the statutory factors set forth in both § 43-292(2) and (4) and that termination of parental rights was in the best interests of the minor children. Specifically, the court found:

> Clear and convincing evidence demonstrates that the parents of the minor children have substantially and continuously or repeatedly neglected and refused to give the juveniles necessary parental care and protection; and that the parents are also unfit by reason of debauchery, habitual use of intoxicating liquor or narcotic drugs, or repeated lewd and lascivious behavior, which conduct if found by the court to be seriously detrimental to the health, morals, or well-being of the juveniles. The court specifically finds clear and convincing evidence that [the father] and Jennifer have denied these children their basic needs for physical and emotional care and protection.

> The children were removed from their mother's care on May 30, 2020, after relatives were unable to find her and could no longer care for the children. The children's aunt, who went and picked them up from the maternal grandmother's house, testified the grandmother was bedridden and in tears. [The father] has been incarcerated throughout the duration of these cases for distribution of methamphetamine following his arrest on November 25, 2019. . . . At that time, the children were picked up by their aunt and eventually ended up at their maternal grandmother's house because that is where the children felt the most comfortable. Jennifer did not live with the grandmother at that time.

> As to both parents, the children have experienced repeated traumatic absences of any parental care. Jennifer has made approximately 10 visits over five months with her children. The foster mother and caseworker testified [that] two of the children have refused to attend visits with Jenifer. Jennifer has not had stable housing, and lived in five different locations and her car in the nine months preceding the adjudication hearing. She has not been consistently employed and has no steady source of income. She has struggled with her mental health, and did not follow through with meeting with a counselor (or participation in other resources) arranged by DHHS. Jennifer testified she was an alcoholic

and had been for the last four years, and described a paranoia that members associated with a drug cartel were after her. Jennifer's lack of participation during the ongoing pandemic mirrors her lack of participation in 2018-19, and thus the court finds the pandemic does not appear to be the cause for Jenifer's lack of meaningful progress in parenting skills.

. . . Substance use and abuse has been an issue surrounding the parents of these children for years. The children previously spent approximately a year and one-half as wards of the state while the parents attempted to find long-term solutions to their parenting deficits, only to return to the system not long after the first cases were closed.

The court specifically finds determinations as to credibility of witnesses weigh in favor of the State's witnesses over that of the mother. Clear and convincing evidence warrants adjudication of the motions to terminate parental rights as to each and every statutory factor alleged in these cases.

The court further found that termination was in the best interests of the children, stating:

[T]aking into consideration the totality of evidence from the adjudication hearing, including an assessment of the children's present circumstances and adjustments, as well as the children's long-term physical, social, and emotional needs, this court finds that sufficient evidence was presented to demonstrate clearly and convincingly that termination of parental rights is appropriate and in the best interests of the children. As to the parents, the totality of the evidence, including the parents' individual failures to provide for their children and accomplish meaningful and sustained improvement in parenting skills demonstrate parental unfitness and collectively dictate in favor of termination of parental rights being in the children's best interests. These children should not be made to wait uncertain parental maturity when there is clear and convincing evidence that the children's overall future well-being stands to improve with the prospects of new relationships which the termination might open for them.

Jennifer has timely appealed to this court.

## ASSIGNMENTS OF ERROR

Jennifer assigns as error that "[t]he State did not establish by clear and convincing evidence that one or more of the statutory grounds listed in § 43-292 have been satisfied and that termination of parental rights is in the best interest [sic] of the minor child[ren]." Brief for appellant at 2.

## STANDARD OF REVIEW

An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings. *In re Interest of Leyton C. & Landyn C.*, 307 Neb. 529, 949 N.W.2d 773 (2020). When the evidence is in conflict, however, an appellate court may give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over the other. *Id*.

Plain error is error plainly evident from the record and of such a nature that to leave it uncorrected would result in damage to the integrity, reputation, or fairness of the judicial process. *In re Interest of Justine J. & Sylissa J.*, 288 Neb. 607, 849 N.W.2d 509 (2014).

ANALYSIS

Jennifer's assignment of error states that "[t]he State did not establish by clear and convincing evidence that one or more of the statutory grounds listed in § 43-292 have been satisfied and that termination of parental rights is in the best interest [sic] of the minor child[ren]." Brief for appellant at 2. However, the argument section of her brief consists of citations to case law and the following argument:

> Although some pre-adjudication services were offered to [Jennifer] prior to the combined hearing, the Juvenile Court never made a formal order laying out the rehabilitative program that [Jennifer] should follow to correct the issues that brought the family into Court and gave no opportunity for [Jennifer] to show compliance with such a plan and demonstrate to the Court the "continued improvement in parenting skills and a beneficial relationship between parent and child" referred to in *In re Interest of Aaron D.*, 269 Neb. 249 (2005). Therefore, the Juvenile Court could not make a finding that "(n)o reasonable efforts to preserve and reunite the family if required under section 43-283.01, under the direction of the court, have failed to correct the conditions leading to the determination.
>
> The Juvenile Court did not make an explicit finding under Neb. Rev. Stat. § 43-283.01(4) that any of the conditions allowing the Juvenile Court to find that reasonable efforts to [p]reserve and reunify the family were not necessary prior to terminating [Jennifer's] parental rights.

Brief for appellant at 11.

The State notes that Jennifer did not argue her assigned error (regarding statutory ground for termination and that termination was in the children's best interests) in her brief and she did not assign the error that she argued in her brief (regarding reasonable efforts). Thus, the State contends that Jennifer has not given this court any error to consider.

Even if we could consider Jennifer's argument that the State had failed to make reasonable efforts to reunify the family, it has no application to the court's termination order here. The court terminated Jennifer's parental rights pursuant to § 43-292(2) and (4). Reasonable efforts to reunify a family are not required unless termination of parental rights is sought under § 43-292(6). See *In re Interest of Hope L. et al.*, 278 Neb. 869, 775 N.W.2d 384 (2009). Thus, reasonable efforts to reunify were not required in this case.

Although Jennifer did not argue her actual assignment of error--that the State failed to establish a statutory basis to terminate under § 43-292 and failed to establish that termination of her parental rights was in the best interests of her minor children--based upon our plain error review of the record, we conclude that the statutory requirements for termination of Jennifer's parental rights pursuant to § 43-292(2) were met and that the court correctly held it was in the children's best interests that Jennifer's parental rights be terminated. See *In re Interest of Justine J. & Sylissa*

*J., supra* (holding that appellate court may review for plain error when appellant's brief fails to comply with court rules).

We first analyze whether the State satisfied its burden to establish that a statutory basis existed to terminate Jennifer's parental rights under § 43-292. The court found that the conditions set forth in § 43-292(2) and (4) were met. Because the State must only establish one such statutory basis, we first examine the evidence submitted in connection with § 43-292(2). See *In re Interest of Leyton C. & Landyn C.*, 307 Neb. 529, 949 N.W.2d 773 (2020) (any one of bases for termination of parental rights codified by § 43-292 can serve as basis for termination of parental rights when coupled with evidence that termination is in best interests of child). Section 43-292(2) provides:

> The court may terminate all parental rights between the parents or the mother of a juvenile born out of wedlock and such juvenile when the court finds such action to be in the best interests of the juvenile and it appears by the evidence that one or more of the following conditions exist:
>
> . . . .
>
> (2) The parents have substantially and continuously or repeatedly neglected and refused to give the juvenile or a sibling of the juvenile necessary parental care and protection[.]

The evidence adduced at the termination hearing established that the minor children had been in out-of-home placement since June 3, 2020, for a total of approximately 4 months. At the time the children were removed, DHHS established that the children were living with a family member who could not care for them, the family did not know where Jennifer was, and the children lacked stable housing and were not attending school on a consistent basis. There were also concerns regarding the children's physical health because the children had lice "a couple" of times and Colten had a severely broken tooth. The children were placed with their aunt, Autumn P. At the time of the termination hearing, DHHS proffered evidence which demonstrated Jennifer's inconsistency regarding services and visitation, lack of progress with her interactions with her children, lack of housing, and lack of employment.

Prior to the time the children were removed by DHHS, McKenzie and Emily were being cared for by their paternal grandmother and Colten was being cared for by an aunt. All three children had previously been cared for by their maternal grandmother. The State was unable to immediately locate Jennifer who had been out of contact with family for 9 days. Jennifer claimed that she left her children with family members because she was in hiding from a drug cartel.

The children had previously been wards of DHHS for 1½ years--from June 2018 to November 2019. During that time period, Jennifer tested positive for methamphetamine and amphetamines twice in June and July 2018; was caught removing drug testing patches which impeded further drug testing; declined to attend individual counseling; and was kicked out of a women's trauma group for, among other things, poor attendance. Jennifer was inconsistent in utilizing out-of-home family support during the 2018-2019 case and did not ask for help or additional services.

During the time period encompassed by the present case, June to October 2020, Jennifer had four different residences and spent considerable time without any home while failing to utilize

out-of-home family support services. While Jennifer struggled with the format of virtual visitations which took place in June 2020 due to the COVID-19 pandemic, she only attended 10 visits with her children once in-person visitation resumed in July 2020, which represents less than 50 percent of the visitations scheduled by DHHS. Some visits were ended early at either Jennifer's or the family support worker's request because, despite attempts at de-escalating or redirecting the children's behaviors, the behaviors were too much for Jennifer to handle. Further, shortly before the termination hearing, both McKenzie and Colten were refusing to attend visits with Jennifer. The children did not ask to see Jennifer outside of visits. The current caseworker in this case testified that in her opinion, the COVID-19 pandemic did not have an impact on the services in this case. Similarly, Autumn testified that in her opinion, the COVID-19 pandemic did not have any impact on Jennifer's ability to complete visits successfully.

Jennifer admitted during her testimony that she had been drinking heavily for 4 years, that she needed help for alcohol and substance abuse, and admitted to suffering from anxiety, depression, and post-traumatic stress disorder. Notwithstanding her need for professional assistance, Jennifer missed the evaluation to determine her community support needs and did not reschedule the appointment. DHHS has not performed any drug tests on Jennifer since June 2020.

The record clearly and convincingly reveals that Jennifer has failed to provide her minor children with a stable home and she admitted to addiction to alcohol and substances and mental health issues. During the pendency of the case, Jennifer attended less than 50 percent of visitations with her children. The aforementioned evidence establishes that Jennifer has substantially and continuously or repeatedly neglected and refused to give the minor children necessary parental care and protection.

We also find no plain error in the county court's finding that the evidence established that Jennifer was unfit and that the termination of Jennifer's parental rights was in the minor children's best interests. Once the State shows that statutory grounds for termination of parental rights exist, the State must then show that termination is in the best interests of the child. *In re Interest of Ryder J.*, 283 Neb. 318, 809 N.W.2d 255 (2012). A child's best interests are presumed to be served by having a relationship with his or her parent. *In re Interest of Isabel P. et al.*, 293 Neb. 62, 875 N.W.2d 848 (2016). This presumption is overcome only when the State has proved that the parent is unfit. *Id.* In the context of the constitutionally protected relationship between a parent and a child, parental unfitness means a personal deficiency or incapacity which has prevented, or will probably prevent, performance of a reasonable parental obligation in child rearing and which has caused, or probably will result in, detriment to a child's well-being. *Id.* The best interests analysis and the parental fitness analysis are fact-intensive inquiries. *Id.* And while both are separate inquiries, each examines essentially the same underlying facts as the other. *Id.*

Autumn testified that she has been involved in the minor children's lives since they were born and that Jennifer's parenting and care of the children was very inconsistent, Jennifer had failed to consistently maintain employment and stable housing, and the children's school attendance was inconsistent.

The children have been in Autumn's care since June 3, 2020. According to Autumn, when the children were placed into her care, they acted like they were hungry and Colten hoarded food. The children had few clothes that fit and those clothes that did fit were dirty. The children's

personal hygiene was a concern because the children had head lice which was treated immediately. Autumn described the children's demeanors as quiet and reserved and she noticed that both Emily and Colten struggled with reading. She further testified that prior to being in her care, the children lacked stability in their lives. In Autumn's care, the children have rules, structure, and they have a day-to-day routine. Autumn also testified that the children "know where to look for help if they need it" and they have responded to the structure in her home "very well" as evidenced by the children being more outgoing, willing to try new things, and willing to accept new people into their lives.

As time has progressed while the children have been out of Jennifer's care, McKenzie "smiles and she laughs, and she's very involved at school." Autumn described that Emily "is the same. She's made so many new friends, and she is very involved in activities as well." Autumn described Colten as "all boy now. He's busy. He plays. And he's involved in Cub Scouts now as well."

Further, Jennifer has not maintained a stable home or employment. During the pendency of this case, Jennifer had 4 different residences and a period of time when she was homeless. In the week or weeks prior to trial, Jennifer moved into a home but a home study or visitation had not yet occurred at this new location. Jennifer has only had one job at a fast-food restaurant during the pendency of this case which she obtained about 3 weeks prior to trial but Jennifer was no longer employed at the time of trial and had not obtained another job. Jennifer testified that she worked other odd jobs but acknowledged these were not stable employment. Further, Jennifer's attendance at visitation with her children was inconsistent and she has failed to request help or additional services in order to deal with her substance abuse and mental health issues.

Although we have no doubt that Jennifer loves her children, the evidence adduced establishes that Jennifer is unfit to care for them and will be unable to do so for the foreseeable future and that this failure is detrimental to the children's well-being. The evidence further establishes that the children have been thriving in the stable environment with Autumn and have been making strides in all areas of their lives. Children cannot, and should not, be suspended in foster care or be made to await uncertain parental maturity. *In re Interest of Walter W.*, 274 Neb. 859, 744 N.W.2d 55 (2008). Based upon our plain error review, we hold that the court did not err in finding that termination of Jennifer's parental rights was supported by sufficient statutory grounds and was in the minor children's best interests.

## CONCLUSION

Having conducted a plain error review of the record, we affirm the court's termination of Jennifer's parental rights.

AFFIRMED.